# Bulifant's Estate.

*Assignment for creditors—Contract—Inventory and appraisement—
Accounting—Act of June 14, 1836, P. L. 628.*

Where a person engaged in business and largely indebted, but not
shown to be insolvent, enters into a contract with a committee of his
creditors, assented to by all of the creditors, by which he assigns all
of his property and assets to the committee as trustees with power to
continue or discontinue the business, sell the assets, pay the proceeds
ratably among creditors, and the remainder to the assignor, no one of
the creditors after the committee has elected to continue the business,
has a right to cite the committee to file an inventory, appraisement
and account in accordance with the Act of June 14, 1836, P. L. 628.
Such a contract is not an assignment for the benefit of creditors within
the meaning of the act of 1836.

Argued March 13, 1912. Appeal, No. 236, Oct. T.,
1911, by J. P. Lewis Company, from order of C. P. No. 1,
Phila. Co., Dec. T., 1910, No. 5,087, discharging rule for
citation in Estate of Guy R. Bulifant, trading as Milk-
men's Supply Company. Before RICE, P. J., HENDERSON,
MORRISON, ORLADY and HEAD, JJ. Affirmed.

Rule for citation. Before MAGILL, J.
The opinion of the Superior Court states the case.

*Error assigned* was the order of the court discharging
rule and dismissing petition.

*W. H. G. Gould,* for appellant.—The agreement at-
tached to the petition dated January 17, 1910, between

Guy R. Bulifant and respondents is in form and substance an assignment for the benefit of creditors within the meaning of the statutes under which respondents may be compelled to file an inventory appraisement and account: Wallace v. Wainwright, 87 Pa. 263; McCleary v. Stoup, 32 Pa. Superior Ct. 42; Fallon's App., 42 Pa. 235.

Neither the provision of the federal constitution or the uniform bankruptcy law was intended to prevent assignments for the benefit of creditors. Such assignments were recognized in the common law; and the various acts relating to such assignments were passed for the purpose of controlling them and not as creating new rights: Beck v. Parker, 65 Pa. 262; Louisville Trust Co. v. Cominger, 184 U. S. 18 (22 Sup. Ct. Repr. 293); Randolph v. Scruggs, 190 U. S. 533 (23 Sup. Ct. Repr. 710); McClain v. Pittsburg Stock Exchange, 219 Pa. 435; Peckham's Assigned Est., 35 Pa. Superior Ct. 330.

*William A. Gray*, with him *Henry John Nelson*, for appellees.—Every agreement which turns over property to creditors is not an assignment for the benefit of creditors. If the assignor has assets sufficient to pay all of his debts, then such an agreement as the one in this case is not an assignment for the benefit of creditors: Bryden's Account, 3 Kulp, 417; Lockhart v. Stevenson, 61 Pa. 64; Boyd v. Smith, 128 Pa. 205; Penn Plate Glass Co. v. Jones, 189 Pa. 290; Deer v. Sneathen, 34 Leg. Int. 290.

It has been decided that the act of June 4, 1901, in that part which relates to insolvency, where it is in conflict with the national bankrupt law of July 1, 1898, is suspended in its operation: Potts v. Smith Mfg. Co., 25 Pa. Superior Ct. 206; Peckham's Assigned Est., 35 Pa. Superior Ct. 330; Miller v. Jackson, 16 Pa. Dist. Rep. 122.

OPINION BY HENDERSON, J., July 18, 1912:

This case was heard in the court below on the petition and answer. To the extent, therefore, to which the averments of the petition are denied or satisfactorily

explained by the respondents the petitioner must be regarded as having failed to make out a case. Unless the undisputed facts entitled the appellant to the relief prayed for the decision given in the court below was correct. The relation of the parties should be considered in the light of the agreement set forth in the petition, for it is by that instrument that the obligation of the appellees to file an inventory and account under the act of 1836 is to be determined. From this agreement it appears that Guy R. Bulifant was engaged in business and was indebted to certain persons, firms and corporations for merchandise sold to him and that he was unable to meet his obligations, by reason of which situation he called a meeting of his creditors, "for the purpose of devising and carrying out such a plan as would enable the said creditors to so manage the said business and to so use the assets of the said Guy R. Bulifant in such manner as would best preserve the same and pay the obligations of the said Guy R. Bulifant to his said creditors." The contract then recites the belief of the parties that the assets of the debtor exceeded his liabilities and that a forced liquidation of the same would entail great loss on the debtor and his creditors and that in view of this condition a majority of the creditors met and appointed a committee to devise means to manage the business and to preserve the assets as in their opinion might be deemed best for the interest of all concerned; that to carry out this object a committee of trustees was appointed to take such action in the premises as the committee in its judgment might deem proper, and pursuant to this arrangement and in consideration of the premises and the mutual promises contained in the contract and for the purpose of carrying into complete effect the intention of the parties Bulifant granted, bargained, sold, assigned, transferred and set over to the committee as trustees all of his property, effects and assets of every character and description and empowered the trustees to enter into and take immediate possession of the same

with authority in their uncontrolled discretion to continue or discontinue the business; to enter into, execute and deliver such contracts as they might deem necessary in the discharge of their duties as trustees and to sell and convert the said assets into cash upon such terms and in such manner and at such times as they might deem fit, and to distribute the proceeds to those entitled thereto. Bulifant agreed with the trustees to actively interest himself in the management and control of the business, devoting his entire time thereto for a consideration of $15.00 per week. The trustees on behalf of the creditors agreed that the latter would not sue Bulifant or take· any legal proceeding for the enforcement or collection of any indebtedness due or owing to the said creditors.‾ On the termination of the trust and the payment to the creditors of all their claims all the property of Bulifant remaining in their possession was to be transferred to him. The petitioner contends that this contract was in effect an assignment for the benefit of creditors and that the respondents were bound under the statutes regulating the administration of such estates to file an inventory and appraisement of the estate and an account of their management of the same. To this the respondents reply that the petitioner was one of the creditors of Bulifant represented by them in the matter of the agreement; that the agreement was entered into by them as representing the petitioner among other creditors with the full knowledge and consent of the petitioner and with the distinct understanding and agreement on its part that it would not sue the said Bulifant or take any proceedings for the enforcement or collection of its claim during the continuance of the trust created by the agreement; that the agreement was entered into by and with the consent of the petitioner and all of the other creditors of the said debtor and by the consent of the debtor himself for the express purpose of avoiding legal proceedings and the necessity of winding up the affairs of the debtor through such proceedings, and that it was distinctly under-

stood and agreed by said creditors including the petitioner that said agreement should not be regarded, and the same should not be treated, as an assignment for the benefit of creditors under the laws of the state of Pennsylvania. It is further alleged that the creditors are endeavoring to close up the affairs of the business in compliance with the obligations of their trust. These allegations of the answer are not denied by the defendant and must be assumed to be true for the present purposes. There can be no doubt of the right of the petitioner and other creditors of the debtor to enter into any agreement they see fit with reference to the preservation of the property of the debtor and the better insuring the collection of their claims unless such agreement be contrary to law. There is no statute or policy of law which forbade the creditors in this case from taking over the management of the debtor's property because of their belief that it could be better managed through the committee selected by them than by the owner himself; and that a principal purpose in entering into the arrangement was that the business should be carried on is evident from the contract and is so stated in the answer of the respondents. If, as is alleged, the petitioner was a party to the arrangement under which the property was transferred to the committee and approved of the plan adopted to promote the respective interest of the creditors and the debtor it is bound by that obligation and cannot now appeal to the statute regulating proceedings in cases of voluntary assignments for the benefit of creditors. The petitioner admits that it gave its assent to the appointment of trustees to work out the debts of the company, but states that it was not a party to the agreement. This is not a contradiction of the assertion of the appellees for it is not alleged that the trustees were without authority in the premises and inasmuch as they were to work out the debts of the company and the respondents allege that the method adopted was in conformity to the wishes of all of the creditors including the appellant the facts

cannot be regarded as negativing the allegation of the respondents in this respect. We are of the opinion therefore that the appellant is not entitled to relief in the manner invoked. That it has a remedy in equity if there be a breach of the trust is manifest, but in the face of the agreement and the answer of the respondents we are not persuaded that the latter can be held to the requirements of the statutes regulating voluntary assignments for the benefit of creditors.

Having reached this conclusion we need not consider the other proposition raised by the answer; that the statutes of the state regulating voluntary assignments for the benefit of creditors are suspended by reason of the existence of the United States bankrupt act.

The order is affirmed.